642 F.Supp. 1270 (1986)
UNITED STATES of America, Plaintiff,
v.
NEW CASTLE COUNTY, William C. Ward, Stauffer Chemical Company and ICI Americas Inc., Defendants.
NEW CASTLE COUNTY, Stauffer Chemical Company and ICI Americas Inc., Defendants/Third-Party Plaintiffs,
v.
AVON PRODUCTS, INC., NVF Company, the Budd Company, Hercules, Incorporated, Specialty Composites Corporation, Standard Chlorine of Delaware, Inc., Diamond Shamrock, American Hoechst Corporation, E.I. DuPont de Nemours & Co., Motor Wheel Corporation, General Motors Corporation, Chrysler Corporation, Witco Chemical Corporation, Amoco Chemical Corporation, Keysor-Century Corporation, Koppers Company, Inc., Chloramone Corporation, FMC Corporation, Allied Corporation, Westvaco Corporation, Wilmington Chemical Corporation, Gates Engineering, Atlantic Aviation Corporation, Kennecott Corporation, Champlain Cable Corporation, Ametek, Inc., State of Delaware and Harvey & Harvey, Third-Party Defendants.
Civ. A. No. 80-489 LON.
United States District Court, D. Delaware.
July 17, 1986.
*1271 Richard G. Andrews, Dept. of Justice, Wilmington, Del., of counsel: Judith A. Dorsey, U.S. Environmental Protection Agency, Philadelphia, Pa., William D. Evans, Jr., Dept. of Justice, Washington, D.C., for plaintiff U.S. of A.
B. Wilson Redfearn of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., of counsel: George J. Weiner of Schmeltzer, Aptaker & Sheppard, Washington, D.C., for defendant/third-party plaintiff New Castle Co.
James F. Burnett of Potter Anderson & Corroon, Wilmington, Del., for defendant William C. Ward.
Jeffrey B. Bove of Connolly, Bove, Lodge & Hutz, Wilmington, Del., of counsel: Gerald Sobel, of Kaye, Scholer, Fierman, Hays & Handler, New York City, Wendy J. Tish, of Stauffer Chemical Co., Westport, Conn., for defendant/third-party plaintiff Stauffer Chemical Co.
Joseph C. Kelly, of ICI Americas, Inc., Wilmington, Del.; of counsel: Denis V. Brenan of Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant/third-party plaintiff ICI Americas Inc.
Gerald C. Foulk of Miller & Foulk, Wilmington, Del., of counsel: J. Brian Molloy of Wald, Harkrader & Ross, Washington, D.C., for third-party defendant Avon Products, Inc.
James T. McKinstry of Richards, Layton & Finger, Wilmington, Del., for third-party defendants NVF Co., General Motors Corp. and Diamond Shamrock.
J.R. Julian, Wilmington, Del.; of counsel: Jennifer Berke of Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for third-party defendant Budd Co.
Henry N. Herndon, Jr. of Morris, James, Hitchens & Williams, Wilmington, Del., of counsel: Edward Wolper, of Hercules Inc., Wilmington, Del., for third-party defendant Hercules, Inc.
James F. Bailey of Elzufon & Bailey, Wilmington, Del., of counsel: Joseph G. Manta, of Frumkin & Manta, Philadelphia, Pa., for third-party defendant Specialty Composites Corp.
James C. Laager of Saul, Ewing, Remick & Saul, Wilmington, Del., for third-party defendant Standard Chlorine of Delaware, Inc.
C. Scott Reese of Cooch & Taylor, Wilmington, Del., of counsel: Lorelei J. Borland of Morgan, Melhuish, Monaghan, Meyer, Arvidson, Arbrutzer & Liskowski, New York City, for third-party defendant American Hoechst Corp.
Richard Allen Paul of E.I. DuPont de Nemours & Co., Wilmington, Del., for third-party defendant E.I. DuPont de Nemours & Co.
David C. Toomey of Duane, Morris & Heckscher, Philadelphia, Pa., for third-party defendants Motor Wheel Corp. and Allied Corp.
Kurt J. Doelze of Ferri & Doelze, Wilmington, Del., of counsel: Harry A. Short, Jr. of Liebert, Short, Fitzpatrick & Hirshland, Philadelphia, Pa., for third-party defendant Chrysler Corp.
John C. Phillips, Jr. of Phillips & Snyder, Wilmington, Del., of counsel: Thomas J. Jackson, of Thorp, Reed & Armstrong, Pittsburgh, Pa., for third-party defendant Witco Chemical Corp.
Howard M. Berg of Howard M. Berg & Associates, Wilmington, Del.; of counsel: *1272 Ronald J. Ganim of Amoco Corp., Chicago, Ill., for third-party defendant Amoco Corp.
William J. Weir, Jr. of Herlihy & Weir, Wilmington, Del., for third-party defendant Keysor-Century Corp.
John C. Phillips, Jr. of Phillips & Snyder, Wilmington, Del., of counsel: Jill M. Blundon, of Koppers Co., Inc., Pittsburgh, Pa., for third-party defendant Koppers Co., Inc.
John W. Noble of Parkowski, Noble & Guerke, Dover, Del., for third-party defendant Chloramone Corp.
John C. Phillips, Jr. of Phillips & Snyder, Wilmington, Del., of counsel: William R. Herman of Dechert Price & Rhoads, Philadelphia, Pa., for third-party defendant FMC Corp.
Thomas G. Hughes of O'Donnell & Hughes, Wilmington, Del., of counsel: Brigid E. Kenney of Venable, Baetjer & Howard, Baltimore, Md., for third-party defendant Westvaco Corp.
Stephen P. Lamb of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., of counsel: John H. Klock of Crummy, DelDeo, Dolan, Griffinger & Vecchione, Newark, N.J., for third-party defendant Wilmington Chemical Corp.
James P. Collins of Healy & Collins, Wilmington, Del.; of counsel: Blake A. Biles of Jones, Day, Reavis & Pogue, Washington, D.C., for third-party defendant Gates Engineering.
James T. McKinstry of Richards, Layton & Finger, Wilmington, Del., of counsel: Franklin S. Eyster, II of Atlantic Aviation Corp., Wilmington, Del., for third-party defendant Atlantic Aviation.
Robert J. Katzenstein of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., of counsel: Stephen W. Miller of Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for third-party defendant Kennecott Corp.
Henry N. Herndon, Jr. of Morris, James, Hitchens & Williams, Wilmington, Del., for third-party defendants Champlain Cable Corp. and Ametek, Inc.
Robert R. Thompson, Dept. of Justice, Dover, Del., for third-party defendant State of Del.
James M. Geddes of Ashby, McKelvie & Geddes, Wilmington, Del., for third-party defendant Harvey & Harvey.

MEMORANDUM OPINION
LONGOBARDI, District Judge.
Defendants ICI Americas Inc., New Castle County and Stauffer Chemical Company have filed third-party complaints in this action against a number of entities which they contend have contributed to the hazardous conditions at the Tybout's Corner Landfill. Among these entities is Chloramone Corporation, a manufacturer of chemicals which operates a plant in Delaware City, Delaware as did its predecessor during 1969-71 when the landfill was in operation. Docket Item ("D.I.") 657, p. 4. The Defendants (hereinafter "Third-Party Plaintiffs" or "TPPs") allege that Chloramone and/or its predecessor disposed of its chemical wastes at the landfill site and that these wastes are responsible in part for the liability with which they are now threatened. Therefore, TPPs seek contribution from Chloramone in its capacity as a past disposer of hazardous substances at the site.[1]
Chloramone has moved to dismiss the third-party complaints for a variety of reasons.[2] *1273 Chloramone's first basis for dismissal, that no right to contribution exists under CERCLA, has already been decided against it by a separate opinion of this Court.
For purposes of deciding the other issues raised by Chloramone, it will be beneficial to restate the pertinent sections of the third-party complaints to which Chloramone objects:
[1] During the time period in which the landfill was in operation, Chloramone generated various solid wastes, including, inter alia, sludge wastes from cleaning chlorine cylinders and aluminum-based paint wastes.
[2] The chlorine sludge wastes contained, inter alia, iron chloride and chromium.
[3] Chloramone disposed of, and/or arranged for the disposal of, substantial quantities of some or all of the above-stated wastes at the Landfill.
[4] The wastes of Chloramone, which were disposed of at the Landfill, contained hazardous wastes and hazardous substances.
D.I. 474, p. 19, ¶¶ 108-111; D.I. 492, p. 19, ¶¶ 100-103; D.I. 496, p. 14, ¶¶ 61-64 [all complaints are identically worded].
Chloramone contends that the complaints on their faces fail to state a cause of action for which relief can be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

A. FAILURE TO ALLEGE THAT CHLORAMONE DISPOSED OF CERCLA "HAZARDOUS SUBSTANCES"
Chloramone's first objection to the third-party complaints is that the TPPs fail to allege that Chloramone disposed of any waste at the landfill which is designated as a "hazardous substance" under CERCLA. Specifically, Chloramone urges that the complaints charge only that the company disposed of iron chloride and chromium at the site and that iron chloride and chromium are not "specifically listed under the statutory provisions used in determining the hazardous nature of a substance or pursuant to any regulations promulgated thereunder." D.I. 657, pp. 12-13 [Chloramone's opening brief]. As a result, Chloramone insists that it cannot be found liable under CERCLA.
The argument that iron chloride and chromium are not CERCLA "hazardous substances" is easily rejected. "Hazardous substances" is defined in the Act as follows:
"[H]azardous substance" means (A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, *1274 natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas)[.]
42 U.S.C. § 9601(14) [CERCLA § 101(14)].
Although the chemical species chromium and iron chloride are not specifically listed by name under section 101(14) of the Act, clearly Chloramone's argument that its wastes do not fall within the definition is meritless. Section 101(14) is a provision which relies heavily on cross-references to other environmental statutes for the source of its terms. Iron chloride falls within the reach of section 101(14) since it is a substance "designated pursuant to section 1321(b)(2)(A) of Title 33," in that it is listed as such under 40 C.F.R. § 116.4 (1985).[3] Similarly, chromium is a CERCLA hazardous substance since it is a "toxic pollutant listed under section 1317(a) of Title 33" in the regulations promulgated under the Clean Water Act, 40 C.F.R. § 401.15(21) (1985) ["chromium and compounds"].[4]

B. FAILURE TO ALLEGE THE QUANTITIES OF WASTE INVOLVED
Chloramone next argues that the complaints should be dismissed because they fail to state the amount of hazardous substances the company allegedly disposed of at the landfill. Chloramone maintains that the CERCLA definition of "hazardous substance" which incorporates lists of chemical substances from other statutory provisions necessarily incorporates into CERCLA the corresponding "threshold quantities" which must exist before liability can be imposed under those other statutory schemes.[5] Since the complaints do not allege that Chloramone disposed of hazardous substances in amounts exceeding these regulatory thresholds, Chloramone insists that the complaints are deficient and must be dismissed.
Chloramone's argument does have some appeal but it is premature. The motion before me is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). D.I. 569. The standard to be applied in ruling on a motion to dismiss under Rule 12(b)(6) is well established:
In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); see Johnsrud v. Carter, 620 F.2d 29 (3d Cir. 1980).
Chloramone's specific objection to the complaints for not alleging "threshold amounts" fails for two reasons. First, the complaints expressly state that Chloramone disposed of "substantial quantities" of iron chloride and chromium containing wastes. This allegation alone suffices to defeat a motion to dismiss under the liberal pleading requirements of Federal Rule of Civil Procedure 8(a).
*1275 Second, and even more importantly, the requirement that a third-party complaint allege a threshold amount would directly conflict with a CERCLA defendant's right to implead third-parties for contribution. Information concerning a corporation's generation, treatment and disposal of hazardous substances has in the past not been the type of information generally available to one outside the corporation.[6] In cases involving older, abandoned landfills, extensive discovery is required in order for a third-party defendant to probe and confirm a reasonably held belief it may have that a third-party defendant did dispose of hazardous substances at a particular site. To allow a CERCLA defendant to file a third-party complaint only to have that complaint dismissed because the complaint could not state precisely the amounts and types of hazardous substances disposed of by the third-party defendant would virtually emasculate the remedial efforts of the applicable statutes.
A third-party complaint for contribution under CERCLA must allege the following: (1) that the third-party defendant disposed of waste at the site; (2) that the waste contains "hazardous substances" as the term is defined in CERCLA section 101(14); and (3) that those particular hazardous substances contained in third-party defendant's waste were located at the site. In the present case, Third-Party Plaintiffs claim that Chloramone disposed of substantial quantities of iron chloride and chromium containing wastes at the landfill site, that iron chloride and chromium are "hazardous substances" under CERCLA and that those particular chemical species have been identified at the site. The third-party complaints suffice to defeat a motion to dismiss.[7]
The Court appreciates Chloramone's concern that in defending this suit it must now undertake a formidable legal obligation with its associated transaction costs. However, the potential abuses are too great if a company were allowed to defeat a CERCLA complaint on a motion to dismiss before the complainant is afforded ample discovery and the ability to substantiate its claims.

C. THE COURT'S ALLEGED LACK OF JURISDICTION
Chloramone argues that the third-party complaints are not ripe for review because Third-Party Plaintiffs have not yet incurred costs in responding to the hazardous conditions at the landfill. Chloramone cites D'Imperio v. United States, 575 F.Supp. 248 (D.N.J.1983) and Bulk Distribution Centers, Inc. v. Monsanto Co., 589 F.Supp. 1437 (S.D.Fla.1984), in support of its position that "the actual cleanup of the release must have begun before a cost recovery action can be reviewed." Id. at 1451.
Chloramone's reliance on D'Imperio and Bulk Distribution Centers is misplaced. In those cases, neither plaintiff had yet been sued nor had either incurred any response costs, yet both sought declaratory judgment that they were entitled to future reimbursement from other responsible parties pursuant to CERCLA § 107(a)(4)(B). In each case, the court dismissed the claim for reimbursement as not yet ripe. In D'Imperio, the court explained the result as follows:
[T]he language of the subsection [CERCLA § 107(a)(4)(B)] states that the ultimately responsible parties "shall be liable for ... any other necessary costs of *1276 response incurred by any other person." (Emphasis added.) Thus, CERCLA seems to require actual, past outlay of expenses. Here, the plaintiffs have neither spent, nor do they propose to spend, funds "consistent with the national contingency plan." 42 U.S.C. § 9607.
D'Imperio, id. at 253; Bulk Distribution Centers [plaintiff's action under section 107(a)(4)(B) not yet ripe since it had not incurred response costs consistent with the national contingency plan].
Unlike the D'Imperio and Bulk Distributions Centers cases, the third-party actions before this Court have not been brought pursuant to CERCLA section 107(a)(4)(B). Rather, Defendants in an existing CERCLA action seek to implead a "responsible" third party for contribution. Third-party actions are governed procedurally by Federal Rule of Civil Procedure 14(a):
At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.
Fed.R.Civ.P. 14(a) [emphasis added].
The Court has already decided that a right to contribution exists under CERCLA and that the third-party complaints contain sufficiently specific allegations under the Federal Rules. Chloramone's motion to dismiss the complaints is denied.

D. THE REMEDY SOUGHT BY THE THIRD-PARTY DEFENDANTS IS FOR A HARM OUTSIDE THE SCOPE OF THE GOVERNMENT'S COMPLAINT
The Government alleges in its Second Amended Complaint, D.I. 191, that Defendants are jointly and severally liable for the release and threatened release of hazardous substances at the landfill. The complaint seeks recovery for all of the Government's costs, "including costs for removal or remedial action, which includes costs of cleanup, sampling, identifying, quantifying, and locating hazardous substances that have been or continue to be released from the Landfill." D.I. 191, p. 16, ¶ 55. In that complaint, the Government identifies a significant number of organic chemicals which it had detected at or around the site and had determined to be hazardous substances released from the landfill.
Chloramone seeks to have the third-party complaints dismissed because their allegations fall outside the scope of the Second Amended Complaint. As stated earlier, the third-party complaints allege that Chloramone disposed of the hazardous substances iron chloride and chromium at the landfill. Neither iron chloride nor chromium is an organic chemical and neither is listed in the Second Amended Complaint as a hazardous substance identified at the landfill. Iron chloride and chromium were not detected at the landfill until after the Second Amended Complaint was filed.[8] Chloramone contends that it cannot be liable to the Defendants for contribution costs since the Defendants/Third-Party Plaintiffs are not being sued for the release of iron chloride and chromium but only for the release of the organic chemicals.
Chloramone's argument is both factually and legally erroneous. A CERCLA defendant's liability under section 107(a) is not restricted to the cleanup of those hazardous substances directly attributable to it. Rather, once the Government has proven that a defendant's waste is present at a site and that the waste contains hazardous substances, the defendant may be held jointly and severally liable for the entire cost of removal and remedial actions required at the site not inconsistent with the national *1277 contingency plan. 42 U.S.C. § 9607(a)(4)(A) [CERCLA § 107(a)(4)(A)].
Chloramone's argument fails in two major respects. First, the CERCLA liability of Defendants/Third-Party Plaintiffs is not limited to the cleanup of the organic chemicals described in the Second Amended Complaint. Chloramone's argument that such a limitation exists runs contrary to CERCLA's joint and several liability scheme in that it allows a defendant to pick-and-choose the specific chemical species for which he will claim cleanup responsibility. That is not the way CERCLA operates. Instead, if after the Government has filed its complaint a defendant determines that other persons may be responsible for response costs, he may implead those persons as third-party defendants. And the Third-Party Plaintiff is not restricted to recover contribution only from persons responsible for the specific chemical species listed as hazardous substances in the Government's complaint. There is no reason why the Government should be burdened with the obligation to identify every chemical species involved in a release before it files its complaint. Once the Government has gathered sufficient information at a site to enable it to determine the identities of as many responsible parties as it deems appropriate, the Government should file its complaint against those parties. These Defendants may be held liable for the entire cost of cleanup. CERCLA places the burden of apportioning blame on the Defendants by way of actions for contribution and apportionment. As a result, in a case like this one where the Government or the Defendants investigate the site further and discover the existence of additional hazardous substances not listed in the complaint, these additional chemical species can be used as a basis for third-party actions.
Second, even if the liability of the Defendants was restricted to the terms of the Second Amended Complaint, Chloramone's reading of the complaint is too mechanical. The complaint prays for recovery of all of the Government's costs, including "costs of cleanup, sampling, identifying, quantifying, and locating hazardous substances that ... continue to be released from the Landfill." Ibid. [Emphasis added]. The Court finds that the portions of the Second Amended Complaint highlighted above are sufficient to put Defendants on notice of their potential liability caused by release of hazardous substances identified by the Government subsequent to the date the complaint was filed. Since Defendants have since been made aware of the presence of additional chemical species, including iron and chromium, at the landfill, they may proceed with their actions for contribution.
Chloramone's motions are denied.
NOTES
[1] (a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section....

* * * * * *
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances....
(4) ... shall be liable....
42 U.S.C. § 9607(a) [Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") § 107(a)].
[2] In its opening brief, Chloramone argued as one basis for its motion to dismiss that the Resource Conservation and Recovery Act ("RCRA") does not impose liability retroactively on past nonnegligent off-site generators. At oral argument, however, Chloramone conceded that this case is fundamentally a CERCLA case and waived an opportunity to press the RCRA claim. I need not, therefore, reach the RCRA issue at this time.
[3] Table 116.4AList of Hazardous Substances and the reference to ferrous chloride therein.
[4] See also, 40 C.F.R. § 261.24 (1985) [chromium listed as a RCRA toxic contaminant]; 40 C.F.R. Part 261, App. VIII (1985) ["chromium and compounds" as RCRA hazardous constituents].
[5] "Hazardous substance" as defined under CERCLA includes a large variety of wastes and pollutants regulated under a number of environmental statutes. But the very presence of a pollutant does not necessarily trigger environmental regulation under all of these laws. For example, under some of these statutes, a particular waste or pollutant is not regulated if its presence in the environment does not exceed an allowable threshold amount which has been established by federal regulation for that particular chemical species. A specific example is the regulation of lead under RCRA. The presence of a de minimis amount of lead in solid waste does not trigger the reporting and regulatory requirements under the Act. Rather, the full regulatory burden comes into play only when a RCRA solid waste is chemically analyzed and the testing procedure determines that lead is present in the sample in excess of the regulatory threshold concentration. If the testing procedure indicates that the presence of lead in the solid waste does not exceed the amount allowed by regulation, the solid waste is not a "hazardous waste" due to the presence of lead.
[6] Today this statement is not necessarily true due to the cradle-to-grave reporting and record keeping requirements of RCRA. Information is more readily available with respect to both the contents of a particular landfill and the parties responsible for disposal of wastes at a specific site. However, RCRA record keeping requirements did not go into effect until May 19, 1980. Many of the present hazardous landfill conditions were caused by disposal of hazardous substances prior to 1980. This is true in the case of Tybout's Corner Landfill which operated between 1969-71.
[7] Because I find that Chloramone's present motion is premature, I need not reach the specific issue of whether the threshold amounts established in other environmental statutes and regulations carry over for purposes of establishing CERCLA liability.
[8] The Second Amended Complaint was filed on April 16, 1984. As part of its continuing investigations at the landfill, the Government published its Remedial Investigation/Feasibility Study, which contains its conclusions as to the nature and extent of the contamination at the site and its assessment of possible remedies. It is this Report which discloses the presence of iron and chromium as contaminants at the landfill.